Business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the court is now sitting. God save the United States and this Honorable Court. Thank you, Madam Clerk. I want to welcome everyone to the morning. We have four interesting cases and we look forward to the arguments of counsel to help us resolve them. In the first case, number 25-14-12, Bloosurf v. T-Mobile. Mr. Peterson. Yes, sir. You represent, maybe it's Bloosurf, you can tell me how to pronounce it, but we're pleased to have you with us and the floor is yours. Thank you, Your Honors. May it please the court, Chad Peterson for Bloosurf, LLC. We are the appellant. This case comes before you from a 12B6 dismissal of our complaint from the District Court of Maryland. My client is a rural broadband provider primarily focused on the eastern shore of Maryland, although he also does business in Delaware and Virginia. He has been in business for over a decade, has contracts on the educational broadband spectrum, which he leases in order to provide his rural broadband service. Cause of action first arose in early 2021 when we began interference with our signal. Somebody had been transmitting across our spectrum where my client again had leased it through the EBS program. We spent years investigating. I could go into granular detail, which is in our complaint, but effectively found out that it was emanating from towers that were owned and controlled by T-Mobile. And we ended up, as again, spent years investigating, made an initial investigation inquiry with the FCC. We're not able to solve the problem. The interference continued over a period of years, and we finally ended up filing a cause of action in April of 2024. We then amended that cause of action in November to add an additional count, which had to do with T-Mobile through a subsidiary, which had effectively taken away our contract for the EBS spectrum that we held with three universities in Maryland that were located on the eastern shore. That was the case that was before the court that was then dismissed on a 12B6 motion, and that is the appeal that occurs before you today. The first legal issue that's before this panel is really a very basic one. We had filed a suit. Our count one was under the Federal Communications Act as originally enacted in 1934, then reenacted in 1996, and we brought a private cause of action under that Communications Act under Section 207. And the question is whether or not Section 207, whether or not the Federal Communications Act as reenacted in 1996 allows a direct cause of action. And our position is it does, and in doing so we rely on the plain language of the statute. And I'll just quote from it, which says... So let's assume that... Go ahead, Judge Avery. Well, even if we assume there's a private right of action under the Section 333, I think it is, there's an election of remedies provision in 207. Yes, sir. And tell us why that wouldn't foreclose your claim under count one. Well, it wouldn't because we haven't sued for damages to the FCC. We really haven't. Why does that make a difference? Because the statute says you can either make a complaint to the commission or bring suit for the recovery of damages. And it doesn't seem to limit the complaint's gravamen to damages or equity. And I mean, there are a number of cases, at least that I've read, that seem to say, you know, it's one or the other, regardless. All right. Well, I think, Your Honor, I'd like to walk backwards. And before I get to 207, I'll get to 206, which says... Don't you already have an appeal pending with the FCC on all that? Well, we don't. What we have is there was a bid, an auction for what was called Section 108 that was one of the licenses that was awarded to T-Mobile. And we protested that award of the license to T-Mobile. That was the FCC action that's still pending. And in that protest, yes, we did mention this interference issue. There's no doubt about it. We raised it. We asked that T-Mobile not be given that auction. It would be the equivalent of if my neighbor trespasses on my property and I go to the zoning commission and argue against their rezoning, but then I also file a separate suit for trespass. They're not preclusive. In other words, we can still participate before the FCC on somebody else's petition or their attempt to gain a license and not forfeit any rights to bring a suit for damages. So let me just bracket the question Judge Agee asked you, which is whether it matters if you sought damages from the FCC. But I'm looking at page seven of your reply brief, which quotes what you asked the FCC to do. You asked them to take all actions to resolve the interference, including the payment of costs, including BlueSurf's cost to upgrade its network, to eliminate the interference. So even assuming for the sake of argument that would matter whether you ask the FCC for damages, why isn't that asking the FCC for damages? Well, payment of costs to upgrade our network is very different from damages, Judge Huygens. I would say damages is... Wait, so not only does it not matter whether you ask the FCC for money, but it matters now what specific money you ask the FCC. I don't know where any of that is in the statute. I mean, I'll say I tend to agree with Judge Agee that the statute doesn't seem to make it relevant whether you ask the FCC for money, but now it appears that you did ask the FCC for at least some money. Well, Your Honor, we asked for costs to upgrade our network. That would be enabled to remedy the interference. That would not be the damages to our business. Right. Well, ordinarily when we think of costs, counsel, ordinarily when we think of costs and they're reimbursable under a statute, we're looking at filing fees, witness fees, discovery costs, and that sort of thing. As Judge Huygens indicated, this seems to kind of bleed over into some type of what we would ordinarily consider to be monetary damages. Well, Your Honor, I would put this in two different buckets. We have one bucket where we're trying to maintain a service to our, I use the word constituents, maintain a service to our customers. And in order to do that, we literally have to get off the network that we are currently using or the technology we're currently using and upgrade in order to continue maintaining the service to our customers. That's a cost. Well, no, that's damages. Like you're claiming that, just think about this in the classic level of nuisance. You're claiming that your neighbor is doing something that is interfering with your enjoyment of your property. And one of the remedies that you're asking is for you to allow, take steps to ameliorate the harm that the neighbor's conduct is causing you. That would be classic money damages. That's not reimbursing you for your filing fee or printing the JA. That would be a form of compensatory damages. Well, Your Honor, I would say it's a remediation. It's a prospective cause. The damages is the customers that you lost. In other words, we lost half of our customer base as a result of this interference. There's no other reason that these people would have stopped using our service. And we never asked the FCC to compensate us for that. We couldn't. That's not something that they do. This interference, which happened over a period of years, literally destroyed our business. We've asked the FCC to intervene. We've asked them to take steps to allow us to, because we have to adjust our network technically in order to deal with this interference, in order to maintain our own, what's called CAF standards. But the bottom line is by You fought it really hard. I'll say that for you. You sued the state court too, didn't you? Well, we sued it. Yes, Judge King, we sued the state court to try and... You did a good job. Thank you, sir. Sir, we sued the state court to try and maintain our contract with the universities because while all this was going on, we were literally being hit on two fronts. We were having this interference with our spectrum, which was costing us customers. And while all that was going on, the universities were trying to terminate our contract to lease the EBS spectrum. And so we had litigation with the universities. We tried to work it out. Then we had litigation to try and prevent the termination. We eventually filed a suit in Wacomico County. We did receive an injunction in August, which required the universities to extend our lease with the FCC. That was subsequently vacated for two of the three universities, not the community college. So that's sort of been an ongoing saga in and of itself. But that's really apples and oranges to the interference issue. The interference issue is different. The interference is what happened to our business that basically crushed our business. I don't know how else to put it. It was repeated interference. It was not stopped. Yes, we did protest the auction 108, the awarding of an additional FCC license to T-Mobile in that exact same territory, because we don't feel that they deserved it. But by intervening in that process, we don't believe that we somehow took away or divested the federal court of jurisdiction to hear a suit for damages on the interference issue. Can I turn you to count two? Yes, sir. So the question I have here is, I understand and believe that you and I have both practiced in Virginia state court. So the question I have is, how is what you're trying to do in count two not the definition of approbate and reprobate? You asked the district court to apply a legal standard. The district court applied that legal standard, concluded that you lost under that legal standard, and now you're asking us to reverse the district court on the theory that it applied the wrong legal standard. In the Virginia Supreme Court, I think that would be a textbook approbate and reprobate type situation. Well, Judge, I don't know as much as Virginia as you do, but I would say the following. I actually went back and re-read our amended complaint, which raised count two, and it states the standard for what's a tortious interference claim for existing contractual relations in Maryland, which is knowledge on behalf of the interferer or an existing contract, knowledge on behalf of the interferer, or intentional actions pursuant to that, and then resulting out for resulting damage. There was no allegation of an unlawful act or some type of improper method, and you know, there were multiple tortious... Sure, but when they moved to dismiss that count, what legal standard did your client urge the district court to apply in ruling on that motion? Well, your honor, what I was going to say is I believe there was at least three different tortious interference counts, and whether or not they were mixed and matched in the briefs, the bottom line is yes, the earlier motions, excuse me, the earlier tortious interference counts all had to do with contracts that were terminable at will, and we did allege improper methods, and if that had been briefed before we filed count two, then sure, it was what it was, but count two was qualitatively different in that that was an existing contract for the EBS spectrum, so once count two was brought into play, those briefs had already been filed, okay, we couldn't go back and fix those briefs, and we didn't need to fix those briefs, but count two was an existing contract, and so in our amended complaint, we actually laid out the standard. We didn't file a new set of briefs at that point. I mean, we talked about the amendment, but the bottom line is that issue was, you know, again, the court just simply quoted the wrong standard when they dismissed count two. Now, they had the right standard on the other tortious interference count, but on count two, again, and my recollection was the briefs had already been filed at that point, so again, count two is qualitatively different because we had an existing contract for the EBS spectrum as opposed to prospective relations with our customers, which I agree could be terminable at will. They could choose a new provider anytime they wanted. Judges, I've worked kind of my way through, you know, I was all prepared to quote from Section 207 and Section 206. The one point that I would make in regard to the Federal Communications Act is as follows, and I'm not really a lawyer so much as a historian, but I remember the 1996 Federal Communications Act, and the whole point of it was to open up telecommunications to get away from the area, allow people like my client, who's, again, a rural broadband provider, allow them access to the market, and the tenor of that, and I believe that underlies Section 206 and 207, is if somebody interferes with their ability to get into the market, if somebody interferes with their right of entry, interferes with their business, which is pursuant to a leased spectrum, which they have bargained for, negotiated, and received, that they have a cause of action, and if the cause of action is unavailable in federal court in this situation, it's almost as if Section 207 will have no meaning, because who would qualify? I mean, if you can't stand up and defend yourself, if someone is broadcasting across your spectrum, then basically Section 207 at that point really becomes a nullity, as does Section 206, because there is no more private cause of action, and everything devolves down to the FCC, and I don't think that was the intent of Congress in 1996, and I don't say that because I was in Congress, I wasn't, but I think if you just read the statute itself, and read the legislative history, it's intended to open up telecommunications to small companies, that was the intent, and maybe it hasn't worked out that way, but that was the intent. The other thing I would add, your honors, is the state law claims, I do believe that Section 414 speaks for itself, it says, nothing shall, in this way, shall abridge or alter remedies now existing at common law. I know that this court had the Johnson case in 2015, which was very unusual, it's a very unusual fact, that was the prison case where the family sued the telecom provider because the inmates were using cell phones to contact people on the outside, and they coordinated an assault. I think the whole premise of the Fourth Circuit's decision in that case was, they looked at the fact that the plaintiff was asking them to jam the signals and say, hold on, that's the exact opposite of what the Telecommunications Act is supposed to do, it's supposed to promote telecommunications, not inhibit it, and that would be a regulation that was really directly in conflict with federal law. In our situation, we're not asking that to do that. Again, we have a lease spectrum, T-Mobile has a lease spectrum, what we're asking the court to do is simply enforce the rights that have been granted by the FCC, which has to approve all leases, so I don't think we're in conflict whatsoever. I know there was a lot of briefing done on that issue, but I think I could synopsize that. Your Honors, I'm pretty much at the end of my time, and it looks like you guys are tired of me for a bit, so I'll just come back and rebuttal. Thank you very much. Thank you, Mr. Peterson, and you have saved some time for rebuttal, and we will turn now to Mr. McLeod, representing T-Mobile. Mr. McLeod? Thank you, Judge King, and may it please the court. Charles McLeod of Williams and Connolly on behalf of T-Mobile. As we explained in our briefs, there are multiple independent grounds for affirming the district court in this case, and I think in approaching the issues, it's helpful to break Blue Surf's claims into three different buckets, and if I could just briefly walk through those buckets. So with respect to the first bucket, that the federal claim in count one under section 333, we think the most straightforward way to resolve that claim is to assume, as members of the panel have suggested, that there could be a private right of action under that provision, and then hold the claim... As opposed to just flat out reject your argument that there's not, because the statute seems to suggest pretty clearly that there is. Well, Your Honor, I think actually the statute is less clear than that question suggests. I would in particular to the North County case from the Ninth Circuit and the Havens case from the Third Circuit, both of which walk through those same statutory provisions and indicate that you need either a predicate determination by the FCC in order to bring a cause of action, or you need a private right of action that is expressed in another statutory provision, and there are other statutory provisions in the FCA like... We can move... I mean, I'm not going to keep you on this too long, because I tend to think you're right on election, but I don't know. I'm just looking at 207, and I don't see a basis for either one of those things in the text of 207. Your Honor, I acknowledge that the text does suggest that there may be... It just says any person, they're a person, claiming to be damaged by any common carrier, which your client is, subject to the provisions of this chapter, which it is, may either, either, they can go to the FCC, or, or, it says, bring suit, which they have, for the recovery of damages, for which they have, for which such common carrier may be liable under the provisions of this chapter, which is their precise argument, in any district court. I mean, I understand that other courts have bought this argument, but I don't have any idea how it's got any basis in the statutory text whatsoever. Well, your Honor, I think you can't read the statutory provisions in isolation. They have to be read within the broader context of the FCA, which is a statutory scheme that vests primary authority over these issues in the FCC, and that's why... And yet, here I have a statute that says a person can either go to the FCC or to sue. Yes, but the way the courts have looked at this is you need some sort of predicate determination by the FCC, and I think often this comes up in the context of unreasonable rates or unreasonable practices, where there is a rich body of FCC authority. The FCC has made determinations about certain practices through rules and regulations. But that changes the language of the statute from may be liable to shall be liable, or is liable, or has already been determined by the FCC to be liable. I mean, I promise I will get off this in a minute, but... No, I'm happy to talk about it as long as your Honor would like. I think the last thing I would say is, to get back to the point I was making before, it would be, I think, inconsistent with the structure of the statutory scheme to say that a private party can go into federal court and have a district court or a jury resolve these complicated technical issues in the first instance when, since really the inception of the FCA, FCC has been supposed to be the prime mover in this area. And I think that's the impulse that drives a lot of the circuit decisions. Sounds a lot like sort of pre-2000s statutory interpretation to me. I'm not trying to ask the court to go back to the bad old days where we had just legislative history and ignored the statutory text. I do think that the courts that have adopted this interpretation have done so for good reasons, common sense reasons relating to the structure of the statutory scheme. Having said all that, as I said before, we don't think the court needs to address that issue in this case because the claim is so clearly barred under Section 207 and the election of remedies provision. If I could just briefly respond to my friend on the other side on those points. First, as a textual matter, we don't read Section 207 to turn on the nature of the request that was made to the FCC. As Judge Agee pointed out, the language of the provision simply says you can go to the FCC or you can go to the district court. And here, Blue Surface tried to do both of those things. Now, even assuming for purposes of argument that there was a requirement that your request to the FCC included a claim for damages, they have done that here. Judge Hayden, as you pointed out, they are requesting what we view as classic money damages in the form of compensation for the alleged damages to their network. And so we think that even under the most sort of generous interpretation of 207 for them, the claim would be barred. I would also note we think the claim is barred by the statute of limitations in Section 415B. But again, if the court resolves the case on the basis of Section 207 and the election of remedies, it doesn't have to get into that sheet. Unless there are other questions on Count 1, I'll turn to Counts 3 through 6, which are the claims, the state law claims the district court found to be preempted. We argued in the district court both preemption and the doctrine of exclusive jurisdiction. They are similar doctrines. Yeah, I've got some questions about that. As a person whose first law clerks gave him a stop sign that says the words, it's not jurisdictional on it, are you arguing that this primary jurisdiction doctrine is subject matter jurisdictional? No. So primary jurisdiction is really a prudential doctrine. It is similar to the extension doctrines that courts have developed. And it really is just a way to defer to the expert agency on these highly technical issues. Primary jurisdiction, however, is different from exclusive jurisdiction, which is a subject matter jurisdictional doctrine. How? Exclusive jurisdiction, and I would point in the Breuil case and the Freeman case from the Second Circuit, is a doctrine that's akin to preemption. You'll know this better. So are these cases before or after the Supreme Court said, stop calling things subject matter jurisdictional that are not subject matter jurisdictional? Breuil is before. Freeman is about the time when Justice Ginsburg was telling lower courts, don't conflate subject matter jurisdiction with this sort of prudential doctrines. But they are grounded in the structure of the statutory scheme, which vests exclusive jurisdiction over technical matters related to the operation of wireless networks. It just seems bizarre to say that's a subject matter jurisdiction doctrine, because the implication of that would be that it indirectly repeals Partially 28 U.S.C. 1331, which is a bit weird. Well, Your Honor, if you don't want to go down the route of exclusive jurisdiction, I think you could focus on preemption in the same way that the district court did. And in particular, that standard for preemption that this court adopted in Johnson interpreting Section 332C3A, that's a standard under which claims that would obstruct or interfere with the wireless provider's ability to provide a network of wireless service are preempted. We think that that standard clearly bars blue surface claims in this case. So do we need to address this exclusive jurisdiction question at all if we go to preemption? No, Your Honor. You can skip over that question, reserve it for another day, and just resolve the case on the basis of the express preemption in Section 332C3A. And that's the provision that Johnson interpreted and found preemption on the facts of that case. I acknowledge that the facts of Johnson are different than the facts of this case, but I think the legal rule Johnson applied is clearly applicable in this case and resolves the case in our favor because BlueSurf is trying to impose state law duties that are fundamentally inconsistent with the rest of the statutory scheme and with the FCC's role in regulating the operation of wireless networks and managing these sort of network interference allocations. So sticking with preemption for a minute. Is your position different from that of Judge Bennett? No, we are perfectly happy to adopt the analysis that Judge Bennett did. We framed that preemption issue in two ways, one with respect to exclusive jurisdiction, and the second with respect to that sort of express preemption that Judge Bennett relied on. And we think Judge Bennett's analysis was exactly right on that issue. Well, I have one question about one piece of the district court's analysis, which is when it said that it's not clear if express preemption is a jurisdictional defense or a non-jurisdictional defense. Do you agree that it's very clear that express preemption is not a subject matter jurisdiction issue? I agree. I agree. I mean, I think that there is some unclarity in the district court decisions on that issue, but I think- I'm not sure why that- But I'm not sure why this question is unclear because it feels to me that the Supreme Court and this court have made very clear that whether there's express preemption is not a subject matter jurisdiction. I agree. It goes to whether you can stay in the plane. That's right. So it wouldn't change the disposition of the case, and you could still affirm, but we have no objection to you clarifying that it is not a subject matter jurisdiction issue. And finally, with respect to the claim in count two for tortious interference, again, we think the district court got the analysis exactly right. Judge Hayden, I'm not as familiar with Virginia law as you are. It sounds similar to the invited error doctrine that I'm more familiar with. The reason we didn't use that label is because we don't think the district court was wrong to apply the standard it did. There's a reason that Blue Surf articulated that standard- Right, but we're in federal court now, so tell us why this- I mean, it seemed it would be in your interest, but why isn't the argument from the appellants on this particular count invited error? Exactly, Your Honor. You could call it invited error. You could call it forfeiture. Whatever label applies, I think it is crystal clear that parties cannot try to change on appeal the legal standard they apply, that they want the court to apply, especially when they argue for that standard. And I would point in particular to JA 580 through 81, which is the portion of the motion to dismiss opposition that Blue Surf filed, where they lay out the standard exactly as the district court applied it. They also apply the same standard in their amended complaint. I think my friend suggested that they had tried to change the standard in the amended complaint. But if you look at JA 653, again, they articulate the standard exactly the way the district court applied. And so to the extent that they are now claiming that was error, I agree, Judge Agee, that would be invited error. And so they can't now fault the district court for- Well, I was just asking the question. I wasn't stating the position. Well, I'll adopt the position and say if they are going to take the position it was error, then it was invited error. Again, we think that the district court got the standard right. And it's clear under that standard that you need some sort of independently wrongful conduct. And as cases like Macklin from the Maryland Appellate Court make clear, simply negotiating with a party to try to get them to come over to your side and offering them a better deal is not the sort of wrongful conduct that is the basis for a tortious interference claim. Can I ask about the preemption? So I just want to make sure I understand the theory. So can you explain how- So what I understand they would get as a matter of state law is essentially some sort of order or directive or damages based on T-Mobile's failure to not, quote, stay in its own lane, as it were, its own spectrum lane. Doesn't federal law already require T-Mobile to stay in its lane? So how would it obstruct, burden, or hinder federal law for state law to simply require T-Mobile to do something that federal law already requires it to do? Well, federal law gives us the authority to decide how best to operate our wireless network subject to the oversight of the FCC. And what they are trying to do is to say, we have a state law duty to operate our network in a way that is preferable to them. For example, they're saying, we can't use certain subframe configurations on our network. We have to use different configurations. They're also saying that we have to monitor our network to make sure that it's not bleeding over in the way that they suggest. There have been suggestions about coordinating with them on a more granular level to coordinate potential interference issues. And all of those things are issues where we are operating within the manner that the FCC permits us to. And so they are trying to impose a state law regulation- And I guess to the extent that you're not, the FCC can order you to not. Exactly. And that gets back to kind of our fundamental point here, which is this is ultimately an issue for the FCC to decide. They've had multiple opportunities to go to the FCC, both through their formal complaints that they recently filed and the informal complaint they filed earlier in the case. And so to the extent that there is a problem with the way that we're operating, the FCC has the opportunity to get engaged, to tell us to change what we're doing. But we don't think that they can impose that sort of obligation on us through state law. We think that's preemptive. So this might be a question more appropriate for Mr. Peterson, but as I understand it, the BlueSurf has some sort of an appeal pending at the FCC, and it's just been sitting there for a long time. Is that correct? That is correct. They have two proceedings currently ongoing at the FCC. One is an appeal from the denial of their informal complaint. They have appealed to the full commission, and that is currently pending, as your Honor suggested. More recently, they filed petitions to deny the assignment of some of these licenses to T-Mobile. Those petitions are, again, currently pending at the FCC, and they raise the very same interference issues that BlueSurf has been raising throughout this litigation. So those issues have been teed up for the FCC to decide multiple times if the FCC wants to get involved. All right. Have those proceedings, have they had briefs or arguments or anything? They have not had arguments, but they have had briefing. There have been submissions by... I'm sorry, go ahead. Yes, there has been briefing. They have put their position in writing. We have opposed their position. And so the issues are fully teed up for the FCC to decide if it wants to get involved in this issue. And when the FCC resolves, finally, one or both of these things, are they subject to appeal to the Court of Appeals? Yes. They can challenge the FCC's decision in the Court of Appeals. But we would have two more appeals. I'm sorry? But we could have two more appeals of this thing the way it sits right now. Your Honor, I'm not sure that it would be two appeals that they would have at Appellate Avenue. I don't know just procedurally if they would need to consolidate those because they do already... They might consolidate or we might consolidate. But right now, there are, what, three separate proceedings? Two in the FCC and one here. There's four. There's two in the FCC, one here, and then one in Maryland State Court. So there has been a lot of litigation already. When I was practicing law, we would characterize this as a lawyer's paradise. I think many lawyers would say the same thing as well, Judge King. But my point is simply that they will have the opportunity to challenge whatever the FCC does if the FCC comes out in a way that's adverse to them. And the structure of the FCA is that these sort of highly technical questions about spectrum interference, about the configuration of a wireless network are for the FCC to resolve in the first instance. So, counsel, if you'll remind me, what is pending in the state court? What's the gravamen of whatever's pending in the state court? In the state court, Blue Surface filed a breach of contract lawsuit against the schools. That is currently on appeal. The public schools, Salisbury University and University of Maryland Eastern Shore, won in the district court on sovereign immunity grounds. And so that question is keyed up to the Maryland Appellate Court currently. But you're in the state court. You're not a named defendant.  Okay. So the litigations against us are this federal district court litigation, and then the proceedings, the two proceedings in the FCC. And, you know, we, as I said before, we had briefed these issues to the FCC. The FCC is aware of the interference allegations. The FCC actually investigated the claim of interference earlier before Blue Surface filed its complaint. It made some recommendations to T-Mobile on how to adjust its operations. We followed those recommendations. And we're willing to do what the FCC tells us to do. But again, our point is, it's ultimately for the FCC to decide whether we're staying in our own lane or not as they're taking this. Have you asked us to hold things in abeyance or dismiss pending resolution by the FCC of those proceedings? No, Your Honor. We think the best course here is to affirm. Courts do sometimes hold proceedings in abeyance or stay them under the primary jurisdiction doctrine where there has not been any kind of determination by the FCC. We don't think that's appropriate here because Blue Surface has already had and taken multiple opportunities to go to the FCC. The FCC has already rejected once its claims in connection with the informal complaint. And so I don't think that there is anything for this court to stay, essentially. I think the court should simply affirm and let the rest of the FCC proceedings play out as they may. Unless the court has other questions, we'd ask that you affirm. Thank you very much, Mr. McLeod. We appreciate your work. Mr. Peterson? I'm sorry. You're on mute, Sam. Yes, sir. Yes, sir. I realize I have five minutes, so I'm going to move quickly and I may not even need the full time. I just want to, in sort of defense of perhaps myself, but maybe my profession, I don't believe we've been overly litigious. I do believe these are actually separate causes of action. And I'll simply say, as to the Maryland complaint, that had to do with whether or not that lease had been extended. We had litigation over that. And my colleague is correct. We had won the injunction in Wacomico County in the summer of 2024. The two state universities subsequently got out on a sovereign immunity grounds on the grounds that there had not been a written amendment to the lease, although they had continued using our services. And we had argued that that essentially ratified an extension of a lease. We did win as to the community college, and we're still transmitting across the spectrum of the community college. So that, for lack of a better term, has been a little bit of a split decision. And again, we have to have this lease so we can serve our customers. That's not damages. That's not trying to put money in anybody's pocket. It's literally allowing us to continue to provide services to folks living in very isolated areas of Worcester County, Maryland, and the Eastern Shore. So that's, again, that's not some type of money grab. That's us trying to stay alive. As to the FCC complaints, the informal complaint, and again, I can't stress this strongly enough, had to do with the awarding of a license to T-Mobile consistent with Auction 108. An Auction 108 occurred, and I'm not an FCC attorney. I'm way outside my lane here. But what I can tell you is we complained about the actions of, again, T-Mobile in regard to winning that auction after what they had done to harm our business, harm our network. We complained about that. And yes, Judge Agee, you're correct. We did ask for an award of cost, which would allow us to uplink so that we could continue providing service to our customers, but we never sought damages. And I think if you look at Section 207, it talks about seeking damages, and we never sought damages. The only case in which we sought damages is this one. The other one is the petition to deny the assignment. Again, T-Mobile has come in. They essentially bought out the spectrum from the universities, which is our lifeblood. It would be essentially taking away our oxygen. And they are seeking assignment. And again, we filed a petition to deny that assignment. We have every right to do it. We have a right to protest, and the FCC is going to do what they do. None of those actions have anything to do with the actual loss of business that we suffered. In 2021, we had 1,200 discreet customers on the eastern shore of Maryland. We were growing. We had all sorts of federal and state contracts that we were stepping into. It was during the middle of COVID, and our people were relying on rural broadband. And that's when we got hit by this interference, which, again, virtually crushed our business. And all these other actions are essentially rearguard actions to try and stay in business. My client has a right to stay in business. But even if he does stay in business, that will never remedy what happened to us when effectively, like I said, we lost half our customer base and really lost any momentum that we had to grow the business and fulfill the vision that we had. So that's essentially what I had. In regard to the tortious interference count, I feel like we've kind of beaten this to death. Again, all the briefs were filed before we amended the complaint. In the amended complaint, we did lay out the standard for tortious interference with an existing contract. And in the next couple paragraphs, and I just checked it, we did talk about use of improper methods. But that was not to say that we hadn't stated the standard for tortious interference. We just said there also were improper methods in case the court wanted to look at that. Again, it was an existing contract. We pled it as such. You know, the court can do what it wants, but I just feel at the end of the day, the district court used the wrong standard and we would have briefed it, but for the fact the briefs had already been filed. So I don't think we were in any way negligent in that respect. As to Section 207, I think Judge Heitens, you're exactly correct. It says what it says. You know, we've all read statutes, I've written statutes, and it's pretty clear grants of authority that any person can come into a federal court and file an action. I understand all the preemption arguments. I've looked at Section 333. In fact, I have it in front of me right now, excuse me, Section 332 regarding mobile services. I have it in front of me right now. I don't think anything we're asking the district court to do would in any way interfere with a due to your obligation under Section 332. So I'm coming to the end of my time. Gentlemen, I appreciate your patience on a very chilly day, and I wish you Godspeed. Thank you very much, Mr. Peterson. I want to commend both the lawyers on the... You've ably presented, very ably presented the positions of your clients, and that's legal work well done. As I said earlier, we were supposedly at the Dan courtroom. If we were in Richmond, we would leave the bench at this point and come down here and sit down. We're not able to do that today. But we'll hopefully get you back to Richmond at some point, and we will be able to meet you in the well of the court. That said, we will take this matter under advisement. And unless either of my colleagues need a break, we'll proceed to the next case, Madam Clerk. Thank you very much. Thank you. Thank you, Your Honor. Judge, the attorneys are ready. In the second case, number 25.
judges: Robert B. King, G. Steven Agee, Toby J. Heytens